The trial court found that a job-related injury caused the employee to sustain a permanent partial disability to the body as a whole, resulting in a seventy-five percent loss of ability to earn. The employer was, therefore, held liable for corresponding workmen's compensation benefits, reasonable and necessary medical expenses resulting from the injury, and a ten percent penalty assessed against it for failure to pay compensation and medical benefits. The employer appeals. We affirm in part and reverse in part.
The record shows that the employee was approximately thirty-eight years old and had been employed with the defendant for more than ten years at the time of the accident. He was a semi-skilled rough carpenter, his work primarily involving the construction of wooden frames and forms. He apparently had a ninth grade education, and a clinical psychologist testified that the employee was borderline retarded. The record also shows a history of drug and alcohol abuse as well as epilepsy, although there is no indication of any seizures for several years prior to the accident.
On January 18, 1984, the employee fell and suffered a severe break to his left hip while at work. The fall occurred in an *Page 523 
incinerator room where the employee did his carpentry work. There was testimony that the room contained various types of debris associated with the carpentry operation and for disposal in the incinerator or to be hauled away by truck. There was conflicting testimony as to what in fact the room contained at the time of the accident, but several witnesses confirmed the presence of bags of waste cloth as well as refuse on the floor from the cutting of cardboard tubes. The employee testified that the room also contained 2 X 8's and cement blocks. He testified that he "tripped over something" on the floor of that room and fell, breaking his hip. The trial court found the evidence to support the employee's claim that the accident arose out of and in the course of his employment.
The employer contends that the employee fell as the result of an epileptic seizure and thus argues the injury was not caused by his employment, but by a noncompensable idiopathic condition. Slimfold Manufacturing Co. v. Martin, 417 So.2d 199
(Ala.Civ.App. 1981), writ quashed, 417 So.2d 203 (Ala. 1982). There was, in fact, testimony by witnesses prior to and subsequent to the employee's fall that could have supported the employer's version of the accident.
It is fundamental that appellate review in workmen's compensation cases, so far as evidence is concerned, is limited to a determination of whether there is any legal evidence, or reasonable inferences therefrom, to support the trial court's judgment. Haggard v. Uniroyal, Inc., 423 So.2d 865
(Ala.Civ.App. 1982). We are not to consider the weight of the evidence nor the propriety of the trial court's finding of fact. WallaceRoofing Co. v. Ganley, 442 So.2d 118 (Ala.Civ.App. 1983). All reasonable doubt in the evidence must be resolved in favor of the employee. Lankford v. Redwing Carriers, Inc., 344 So.2d 515
(Ala.Civ.App. 1977). Given the employee's testimony, the corroborating testimony that there was debris in the room where the employee fell, and our narrow standard of review, we cannot hold that the trial court erred in finding the employee's injury was caused by a job-related injury.
The employer also contends that the trial court erred in finding an injury to the body as a whole and in finding a seventy-five percent loss of ability to earn. It argues that there was insufficient evidence to support those findings.
The employee's physician described the employee's hip after the fall as having "had the hell busted out of it." He described the employee's injury to be a severely comminuted subtrochanteric and intertrochanteric fracture of the left femur. We have previously held such a fracture to be of the hip and thus a nonscheduled injury. City of Moulton v. Pearson,54 Ala. App. 340, 308 So.2d 252, 254 (1975).
Surgery was performed on the employee's hip and a metal plate and nail apparatus was inserted to bind together the broken pieces of bone. The evidence showed that eight months after the surgery, the employee was released from active treatment. His doctor testified that the employee was still limping at that time, but that, in time, he would probably be able to work out the limp. He testified that although he thought the employee could put all his weight on his left leg, he could not state conclusively that the employee would be able to do so.
Approximately six months later, another physician examined the employee. He indicated that an overall satisfactory recovery had been made from the surgery, but that the employee still complained of pain. He assigned a twenty-five percent permanent medical impairment to the employee's left lower extremity.
At trial, the employee testified that he continued to have pain and that he could not move his right arm. He testified that he could not sit still for any length of time nor could he climb stairs or a ladder. He said that he could not get in and out of a bathtub without help and that he could not do any work at all, including washing dishes and cooking.
A clinical psychologist determined the employee to have suffered a seventy-five *Page 524 
percent loss of earning capacity. His determination was based on IQ tests, observation of the employee, and on a physical evaluation rating made by the doctor who operated on the employee's hip. He concluded that, given the employee's education, work experience, and intelligence, together with his hip injury, the employee had been reduced to sedentary employment.
The employer objects to these conclusions, stating that they were primarily based on the doctor's rating of the employee's physical condition — an evaluation that the employer contends was never introduced into evidence and that was made several months before the employee was released from the doctor's care, and before the employee's condition had stabilized.
We have consistently held that the determination of the percentage of permanent partial disability is for the trial court to make after considering all the facts and circumstances contained in the evidence. Jones v. City of Huntsville,Alabama, Inc., 55 Ala. App. 439, 316 So.2d 689 (1975). We have also held that when there is other legal evidence to support the trial court's findings of fact in workmen's compensation cases, technical questions regarding admissibility of evidence will not be considered on appeal. Alatex, Inc. v. Couch,449 So.2d 1254 (Ala.Civ.App. 1984). Inasmuch as the employee's injury was to a nonscheduled member, and given his level of intelligence and prior semi-skilled work experience, and in view of his testimony regarding his present physical condition, we cannot hold that the trial court erred in its finding of a permanent partial disability to the body as a whole with a seventy-five percent loss of earning capacity.
The employer asserts two final grounds of error. It contends that the employee did not prove that certain medical charges resulted from his job-related injury. The employee's doctor testified that the charges in question were reasonable and necessary. We have examined the record and found that the trial court's judgment is supported by legal evidence. We, therefore, affirm on this issue.
On the final issue of the ten percent penalty assessed against the employer for its failure to pay compensation and medical benefits, we reverse. Section 25-5-59, Code of Ala. 1975, permits such a penalty when the failure to pay is without "good cause." We have held that good cause exists when there is a good faith dispute as to the employer's liability to its employee. Read News Agency, Inc. v. Moman, 383 So.2d 840
(Ala.Civ.App. 1980). Judge Haley states the following on this question:
 "It could be argued that this question does not apply in a contested case but if the evidence shows that the defendant failed to make the payments due under the workmen's compensation law without any semblance of a 'good cause' most likely the penalty could be assessed."
Handbook on Alabama's Workmen's Compensation Law at 38 (1982).
Considering that there was evidence that the employee's fall might have been caused by a condition not arising out of and in the course of his employment, we find that there was a good faith dispute as to the employer's liability to the employee. We, therefore, find that the employer is not liable for the penalty assessed against it by the trial court. Otherwise, the case is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
BRADLEY, P.J., and HOLMES, J., concur.